IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

RICHARD AYCOX,

    Plaintiff,

v.                                                             CASE NO. 1:10-cv-51-WS-GRJ

CITY OF GAINESVILLE,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court upon the parties' cross-motions for summary judgment, Docs. 52, 63, 70.[1] The parties have responded to the cross-motions, Docs. 68, 70, and the motions are therefore ripe for review. For the reasons set forth below, the undersigned respectfully recommends that Defendant's Motion for Summary Judgment be **GRANTED**, and that Plaintiff's Motions for Summary Judgment be **DENIED**.

## I. BACKGROUND

Plaintiff initiated this case by filing a *pro se* complaint construed as asserting a hostile work environment claim and a retaliation claim under Title VII (Doc. 1). Plaintiff subsequently filed First and Second Amended Complaints (Docs. 6 and 12) pursuant to the Court's orders. Upon review, the Court determined that Plaintiff could not proceed on his hostile work environment claim because the allegations of the Second Amended Complaint did not show that he filed a timely charge with either the Equal Employment

---

[1] Plaintiff filed two pleadings styled as motions for summary judgment, but a review of Doc. 70 reflects that it is in substance a response in opposition to Defendant's motion for summary judgment.

Opportunity Commission (EEOC) or a certified fair-employment practices agency (FEP) within 300 days of the alleged discrimination. Doc. 16. The Court permitted Plaintiff to file a Third Amended Complaint in order to provide additional factual details about his retaliation claim. *Id*. Plaintiff filed a Third Amended Complaint, Doc. 18, but also sought leave to pursue his hostile work environment claim. The Court denied such leave, finding that Plaintiff again failed to show that he filed a timely charge. The case proceeded upon the retaliation claim asserted under Plaintiff's Third Amended Complaint (hereafter "Complaint"). Doc. 23.

According to the allegations of the Complaint, Plaintiff was employed by the Regional Transit System ("RTS") from May 2007 until March 2010. The Complaint alleges that between August 2008 and November 2008 Plaintiff lodged several complaints with RTS managers and supervisors regarding the allegedly inappropriate behavior of a female RTS co-worker. Thereafter, several RTS supervisors allegedly discriminated against Plaintiff based on his gender and were negligent in their supervisory responsibilities in refusing to address Plaintiff's complaints. Plaintiff complained to several supervisors, and notified the Defendant, City of Gainesville, in writing of alleged gender discrimination that Plaintiff suffered as well as the alleged inadequate response by RTS managers and supervisors. Plaintiff contends that RTS officials conspired to retaliate against him by taking adverse disciplinary action against Plaintiff in response to his complaints of gender discrimination. Doc. 18.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added)[2].

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

The Eleventh Circuit has noted that

[i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his

---

[2]Although unpublished opinions are not binding on this Court, they are persuasive authority. 11th Cir. R. 36-2.

> allegations sufficient to raise a genuine issue of material fact regarding each element of his claim. As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth., 3*01 F. App'x 881, 885 (11th Cir. 2008). Where the nonmoving party bears the burden of proof, he must offer more than a mere "scintilla of evidence" in support of his position. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986).

## DISCUSSION

In order to establish a *prima facie* claim for retaliation under Title VII, Plaintiff must establish the following elements: (1) that he engaged in statutorily protected activity; (2) that he suffered a materially adverse employment action; and (3) that there was a causal link between the two events. *Dixon v. The Hallmark Companies, Inc.*, 627 F.3d 849, 856 (11th Cir. 2010). If a Plaintiff establishes a *prima facie* case, the burden shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997). If the employer meets this burden, then the employee must show that the proffered explanation is a pretext for retaliation. *Id*. Evidence of pretext sufficient to survive summary judgment must show such weakness, implausibilities, or other defects in the

proffered reason that "a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

Defendant's summary judgment evidence (Docs. 53-62) is summarized in Defendant's Statement of Undisputed Facts, Doc. 51. Plaintiff points to no competent summary judgment evidence that calls the accuracy of Defendant's Statement into doubt, and Plaintiff has not provided his own Statement of Undisputed Facts. *See* Docs. 63, 70.

Briefly, Defendant's evidence reflects that Plaintiff operated a City bus on a UF campus route referred to as the "Commuter Lot" route. Plaintiff made repeated complaints about the work performance of a co-worker assigned to the same route, Angelina Banks, because Plaintiff believed that Ms. Banks prevented him from keeping his bus on schedule. As Plaintiff conceded in his deposition, RTS management took no action against him for being off schedule. Management monitored Ms. Banks' performance and instructed the drivers on the route to allow additional time between buses to prevent "stacking" of buses.

In view of Plaintiff's ongoing complaints about Banks, management scheduled a mediation with the two employees and a Union representative. Plaintiff declined to discuss his concerns about the route, but testified that Ms. Banks used the meeting as an opportunity to downgrade him. He continued to complain about Ms. Banks following the mediation, and complained about supervisors' responses to the situation.

In January 2009, Plaintiff received a quarterly performance evaluation that reduced his previous rating in the categories of "attitude toward work and

supervision" and "cooperation and teamwork." Plaintiff received a rating of "1" for "punctuality". Plaintiff complained about the evaluation. In his deposition, he admitted calling his supervisors incompetent with respect to his evaluation.

In February 2009, Plaintiff filed a discrimination complaint with the City's EO Office alleging discrimination based on gender and race. His complaint stemmed from his belief that Ms. Banks received favorable treatment due to being a black female of a lighter color than Plaintiff. Plaintiff also complained that a transit supervisor addressed a black transit operator as "you people," which Plaintiff viewed as racist. Management interviewed the supervisor and the operator; the supervisor explained that he meant "you drivers" and the operator stated that she did not take the remark as offensive. Plaintiff was informed that the matter had been investigated, and Plaintiff testified that he was not disciplined or retaliated against for filing the complaint.

In April 2009, Plaintiff complained to the Mayor's office regarding the "situation" with Ms. Banks. He testified that he was unaware of any adverse action against him for filing that complaint.

In November 2009 Plaintiff was warned for using a City vehicle to go to the grocery store. The warning did not affect the terms of Plaintiff's employment, and similar warnings were issued to other employees who violated the RTS policy regarding vehicle use. Plaintiff testified, however, that he believed the warning was in retaliation for complaining about his supervisors.

In December 2009, Plaintiff emailed numerous City officials complaining about the warning. Management investigated the complaint and found that the

warning was appropriate, and Plaintiff admitted that no action was taken against him for sending the complaint. However, after Plaintiff received management's response to his complaint he confronted Transit Director Jesus Gomez. Gomez testified that Plaintiff screamed and threatened him. Plaintiff admitted using a "loud tone" with Gomez and telling him that he and his people were liars and that Plaintiff was not going to put up with it anymore.

In view of Plaintiff's behavior toward Gomez, management delivered a letter to him requiring him to submit to a physical and/or mental examination in order to evaluate his fitness for duty, pursuant to City ordinances. Plaintiff was placed on paid leave and directed not to return to work until receipt of a fitness for duty report. Plaintiff was escorted to his locker to retrieve his belongings, and as he exited the building a transit supervisor heard Plaintiff threaten to "blow the place up." Plaintiff maintains that the statement was meant as a joke.

Following an examination, Dr. Bordini, a licensed psychologist, issued a report deeming Plaintiff unfit for duty due to his threats of harming other employees and property. Dr. Bordini opined that Plaintiff was likely to continue to imply or make threats, and that there was a risk of escalation of behavior that could place coworkers and others in physical danger.

RTS management then issued a letter offering Plaintiff an opportunity to take leave under the FMLA in order to seek treatment, and encouraging Plaintiff to take advantage of the City's Employee Assistance Program (EAP). At his deposition, Plaintiff testified that he never received the letter and was unaware of Dr. Bordini's conclusions.

In February 2010, the City issued another letter to Plaintiff detailing efforts to provide him with a FMLA packet, which Plaintiff had failed to complete. Plaintiff was again encouraged to take advantage of the EAP.

In March 2010, Plaintiff was advised that his leave since December 2009 had not been designated under the FMLA because Plaintiff did not submit the required certification. Plaintiff denied receiving the letter. Plaintiff testified that he called RTS between December 2009 and March 2010 regarding his employment, but he never spoke with anyone. Plaintiff admitted that he did not seek treatment after his fitness for duty evaluation, did not submit FMLA paperwork, and did not request any accommodation from the City.

In view of Plaintiff's extended absence, he was terminated. Plaintiff was offered an opportunity to participate in an informal conference to rebut the reasons for termination, but he failed to attend the conference and his employment was officially terminated on March 18, 2010.

Plaintiff's summary judgment motion and response in opposition to Defendant's motion assert that the determination that he was unfit for duty because of aggressive behavior was based "solely on hearsay" from Gomez and other RTS managers and supervisors. Plaintiff alleges that RTS and City officials altered and falsified public records, as reflected by asserted discrepancies between the printed and electronic versions of his performance evaluations. He contends that the City's EO office was negligent in its investigation of his complaints. Plaintiff points to the absence of any disciplinary

record as support for his claim that his termination was due to retaliation and not performance. He notes that he does not have a documented history of multiple incidents of aggression toward co-workers and supervisors, contrary to the City Manager's statements in the letter requiring him to submit to a fitness examination. Docs. 63, 70.

Even if Plaintiff's complaints regarding the activities of his co-worker and the actions of his supervisors constitute protected activity, Plaintiff has pointed to no competent summary judgment evidence that establishes a causal connection between his complaints and his eventual termination. Nevertheless, the Court is mindful that "[t]he causal link element is construed broadly so that a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir.2001)* (internal quotations and citations omitted). Causation may be inferred by close temporal proximity between the protected activity and the adverse employment action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). Thus, viewing the evidence in the light most favorable to Plaintiff, the Court will infer a sufficient causal link between Plaintiff's complaints and his termination for purposes of this analysis.

On this record, the Court concludes that Defendant has advanced a legitimate, nondiscrimatory reason for Plaintiff's termination – his continued absence following the determination that he was unfit for duty and his failure to

seek FMLA leave, treatment, or accommodations that might have permitted his return to employment.

Once an employer has advanced a legitimate, nondiscriminatory reason, a plaintiff must prove pretext by a preponderance of evidence. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994). An employer's reasons may be shown to be pretextual "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [its] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (quotation omitted). A reason cannot be a "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotation omitted).

If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and rebut it." *Chapman v. AI Transp.*, 229 F.3d 1013, 1030 (11th Cir. 1994). A plaintiff must show pretext with "concrete evidence in the form of specific facts." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir.2009). Mere "conclusory allegations and assertions" will not suffice. *Id*.

In this case, even liberally construing Plaintiff's arguments, his claim of pretext is based on wholly conclusory allegations and assertions. Defendant has

offered competent summary judgment evidence that Plaintiff acted aggressively toward his supervisor, Gomez, and later made threats as he was leaving the RTS operations building.  He was placed on paid leave pending a fitness-for-duty examination.  After being deemed unfit for duty by a psychologist, Plaintiff failed to seek treatment and accommodations, or complete paperwork necessary to qualify for FMLA leave.  These proffered reasons would plainly motivate a reasonable employer to terminate an employee. Accordingly, summary judgement in favor of the Defendant is due to be granted.

## RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, Doc. 52, should be **GRANTED**, that Plaintiff's motions for summary judgment, Docs. 63 and 70, should be **DENIED**, and that judgment should be entered in Defendant's favor.

IN CHAMBERS  this 6th day of August 2013.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**